**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

In re:
                                                  **CASE NO. 02-22582**

**LABELON CORPORATION,**

                     **Debtors.**        **DECISION & ORDER**
_____

## BACKGROUND

On July 3, 2002, Labelon Corporation (the "Debtor") filed a petition initiating a Chapter 11 case, which was subsequently converted to a Chapter 7 case on July 31, 2005. The Debtor, as debtor and debtor-in-possession, was represented in its Chapter 11 case by Damon & Morey LLP ("Damon & Morey").

The Debtor entered into a post-petition financing arrangement with Congress Financial Corporation ("Congress"), a secured creditor that held a perfected prepetition security interest in all of the personal property assets of the Debtor. On July 30, 2002, the Court entered an order approving the financing (the "Final Borrowing Order").

The Final Borrowing Order, to insure payment of all the prepetition and post-petition indebtedness due Congress, granted it: (1) a post-petition security interest (the "Secured Claim") in all of the Debtor's personal property, but not in the recoveries of any avoidable preferential transfers under Sections 547 and 550

**BK. 02-22582**

(the "Preference Recoveries"); and (2) a super priority Section 364(c)(1)[1] administrative expense (the "Super Priority Claim").

The Final Borrowing Order also subordinated the Secured and Super Priority Claims to a $50,000.00 carve-out (the "Carve-Out") for the claims of: (1) the unpaid fees and expenses of the professionals of the Debtor and/or the Committee, and the expenses of members of the Committee, as allowed by the Bankruptcy Court; and (2) the statutory fees (the "Mandatory Fees") of the United States Trustee (the "U.S. Trustee").

It appears that when the Debtor filed its petition and when the Final Borrowing Order was entered, the principals of the Debtor and Damon & Morey did not believe that the provisions of the Carve-Out or the Super Priority Claim would actually come into play, because they believed that either: (1) the Debtor would be sold as a going concern or would propose and have confirmed a plan of reorganization that, in either case, would provide for full payment of the Secured Claim as well as all Chapter 11 administrative

---

[1] Section 364(c)(1) provides that:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> > (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title[.]

11 U.S.C. § 364 (2006).

**Page 2**

claims; or (2) even if there were a liquidation of the Debtor, the sale of the Debtor's assets, including its real estate, would generate sufficient net proceeds to pay the Secured Claim in full and all Chapter 7 and Chapter 11 administrative claims.[2]

On December 29, 1995, this Court entered a Decision & Order in *In re Flexseal Packaging Corp.* (Case No. 93-22374) ("*Flexseal*"), which required fee conferences ("Flexseal Conferences") with the Court in Chapter 11 cases when it became apparent that professional fees would exceed $15,000.00. From the Court's perspective, the purpose of these Conferences is for the Court and interested parties to minimize disputes that might occur later, after extensive professional services are rendered, as to the necessity or reasonableness of any of those services and any requested allowances. The Flexseal Conferences are to be initiated by the professional, the primary beneficiary of the Conference, when it becomes reasonably certain that the amount it will request as an allowance for its services will exceed $15,000. Perhaps because of the: (1) reduction in the number of Chapter 11 cases filed in this Court since 1995; and (2) the generally smaller size and less complexity of the Chapter 11 cases that are being filed,

---

[2] After the case was converted to a Chapter 7 case, the Court ruled that the Super Priority Claim of Congress secured both prepetition and post-petition indebtedness and that Congress had a Super Priority Claim of in excess of $1,400,000.00. Since Damon & Morey negotiated the post-petition financing, it was at all times aware of the possibility of such a Claim.

professionals have not been initiating Flexseal Conferences, and neither Damon & Morey, the U.S. Trustee nor any of the interested parties, including Congress, requested a Flexseal Conference in the Debtor's Chapter 11 case. If the Court had conducted a Flexseal Conference, many, if not all, of the contested issues surrounding the pending allowance requested by Damon & Morey could have been avoided.

Beginning on October 30, 2002, Damon & Morey, as general counsel to the Debtor, began to provide legal services in order to recover: (1) various alleged avoidable preferential transfers (the "Preference Services"); and (2) various of the Debtor's prepetition accounts receivable (the "Receivables Services").

At the time that Damon & Morey began to provide the Preference and Receivables Services, it alleged that it did not fully focus on the fact that the Services were administrative expense claims of professionals that might ultimately be: (1) included within and limited by the Carve-Out; or (2) to the extent not covered by the Carve-Out, subordinated to the Super Priority Claim. In addition, Damon & Morey provided the Services at its hourly rates, as provided for in its June 4, 2002 Retainer Agreement, rather than on a contingent fee basis, the customary arrangement in view of the number and nature of the alleged preferences involved.[3]

---

[3] The Court would definitely have questioned this hourly fee arrangement had there been a Flexseal Conference.

**BK. 02-22582**

On August 18, 2003, Damon & Morey filed a First Interim Fee Application for an allowance of compensation for services rendered and expenses incurred, as the attorneys for the Debtor for the period from July 1, 2002 to July 31, 2003 (the "Interim Application"). The Interim Application requested an allowance for attorneys' fees of $118,366.00 and for expenses of $4,830.11. The Application included a request for $33,882.50 in fees and $2,306.72 in related expenses in connection with Preference and Receivables Services.

On October 8, 2003, the Court entered an Order (the "Interim Allowance Order") which allowed Damon & Morey $94,866.00 for fees and $4,830.00 for expenses (the "Interim Allowance") and, in response to the concerns of the U.S. Trustee, provided that supplemental orders could be submitted to the Court for up to $23,500.00 if and when orders approving the settlements of various avoidable preference cases were entered. The Order also provided that, "such allowed amounts may be paid from the retainer held by Damon & Morey, from the Carve-Out from its secured position and/or other funds agreed to be paid by the Debtor's secured lender, Congress Financial Corporation (New England) or from funds belonging to the Debtor."[4]

---

[4] This payment provision was not an indication or confirmation by the Court that any payment, except from the Damon & Morey retainer, was not limited by the Carve-Out or potentially subordinated to any Super Priority Claim Congress might be found to have.

**BK. 02-22582**

The Court is not aware of any written agreement between Damon & Morey and Congress in connection with the payment of the Interim Allowance. Assuming that: (1) Damon & Morey applied its then remaining retainer balance of $34,462.78 against the allowed fees of $94,866.00 and expenses of $4,830.00; (2) there was no formal agreement with Congress providing that any other payments of the Interim Allowance were not to be charged against the Carve-Out; and (3) the $65,233.22 balance of the Interim Allowance was received by Damon & Morey ($99,696.00 [$94,866.00 plus $4,830.00 = $99,696.00] less $34,462.78 = $65,233.22), the Carve-Out was exceeded by the payment of the Interim Allowance.[5]

The Docket for the Debtor's Chapter 11 case does not indicate that there was ever an amendment to the Final Borrowing Order to expand the Carve-Out.

On June 6, 2005, Damon & Morey filed a Second Interim Fee Application for the period from August 1, 2003 through April 30, 2005 (the "Second Interim Application"). The Second Interim Application requested an allowance for attorneys' fees of

---

[5] Even if the payments were made from funds "belonging to the Debtor" that were not subject to the Secured Claim, Damon & Morey had to have assumed that the amounts it received over and above its retainer and the Carve-Out were subject to disgorgement, in whole or in part: (1) should Congress have an unpaid Super Priority Claim; and (2) if there were other professionals with claims against the Carve-Out. These professionals would include Eldredge, Fox & Porretti ("Eldredge Fox"), the Debtor's accountants that the Debtor was authorized to employ on August 9, 2002, the same day the Debtor was authorized to employ Damon & Morey.

Page 6

**BK. 02-22582**

$121,189.50 and for expenses of $14,982.44. The Application included a request for $95,196.00 in fees and $10,757.45 in related expenses in connection with Preference Services.

Congress and the U.S. Trustee filed numerous pleadings and submissions with the Court objecting to the Second Interim Application and Damon & Morey filed numerous pleadings and submissions in response to those objections. The submissions also demonstrate that the Court has given the parties every possible opportunity to settle their disputes. Unfortunately the parties have not been able to resolve this matter.

Following is a summary of what the Court believes are the principal issues and arguments set forth by the parties in their numerous submissions: (1) the U.S. Trustee asserted that: (a) many of the services provided by Damon & Morey were unnecessary, unreasonable and duplicative, including that it proposed to be paid for its Preference and Receivables Services at an hourly rate rather than on a contingent fee basis; (b) Damon & Morey had failed to exercise any billing judgment in connection with its Second Interim Application; and (c) the Court should revisit the Interim Allowance; (2) Congress asserted that: (a) the Carve-Out, even without considering any amounts received by Damon & Morey in excess of its retainer and in payment of the Interim Allowance, has been exceeded by the following payments made by Congress to other

**Page 7**

**BK. 02-22582**

professionals of the Debtor appointed by the Court and professionals within the meaning and intent of the Carve-Out (collectively, the "Other Professionals"): (i) Joseph Finn & Co. ("Finn") for auction services in the amount of $15,201.00; (ii) Woods Oviatt & Gilman ("Woods Oviatt") for collection services in the amount of $13,222.90;[6] (iii) Eldredge Fox for professional accounting services in the approximate amount of $40,000.00; and (iv) PCM, LLC ("PCM") for professional executive management services in the amount of $34,762.68;[7] (b) its Super Priority Claim of in excess of $1,400,000.00 takes precedence over any and all administrative expenses in the Debtor's Chapter 11 case, including any fees and expenses incurred by the Debtor's professionals and not paid by any retainers being held by those professionals, including Damon & Morey, to the extent that those fees and expenses exceed the Carve-Out; (c) Damon & Morey's Second Interim Application should be denied in full because the Carve-Out has been exceeded and any further professional fees and expenses are subordinated to the Super Priority Claim; and (d) if Damon & Morey

---

[6] A July order granted Woods Oviatt $9,689.50 in fees and $298.59 in expenses for a total of $9,988.09, less a $6,144.06 retainer. From the Court records, this would leave a $3,544.90 charge against the Carve-Out, which is for accrued and unpaid fees, rather than a $13,222.90 charge. The Court does not know if Woods Oviatt provided other services to the Debtor that Congress paid it for. The docket does not show that Finn or PCM ever filed an application for an allowance.

[7] These payments to the Other Professionals, after an adjustment for Woods Oviatt, total $93,508.58.

**Page 8**

did not withdraw its Second Interim Application in full, Congress would apply to the Court to have it enter an order disgorging an appropriate portion of the amounts Damon & Morey received under the Interim Allowance Order in excess of its retainer; and (3) Damon & Morey alleged that: (a) the amounts it received under the Interim Allowance Order, in excess of its retainer, which were from Preference Recoveries, were not subject to the Secured Claim of Congress; (b) some of the Other Professionals that Congress paid either were not professionals within the meaning and intent of the Carve-Out, or, like Eldredge Fox, had not had their fees and expenses formally allowed by the Court, as required by the language of the Carve-Out; (c) notwithstanding the Carve-Out and the Super Priority Claim, it would be inequitable and would unjustly enrich Congress for Damon & Morey to receive no compensation for its Preference Services and related expenses, which resulted in Preference Recoveries of in excess of $180,000.00; (d) Congress agreed to compensate Damon & Morey for certain of its Receivables Services and related expenses separately from the Carve-Out; and (e) it would accept as full payment for its Preference Services, thirty percent (30%) of the amounts collected plus its related expenses if it were paid and allowed to retain specified additional amounts under the Interim Allowance Order and as requested in the Second Interim Application.[8]

---

[8] This proposal has never been accepted by Congress.

**DISCUSSION**

I. **Overview**

There is no provision in the Bankruptcy Code or Rules for a Bankruptcy Court to require that there be a carve-out for professionals and/or Mandatory Fees in Chapter 11 cases where a prepetition secured creditor has liens on all of the debtor's property, so that there are no free and clear assets available for the payment of administrative expenses. As a result, this Court has never required a secured creditor to grant such a carve-out or become involved in any negotiations for the terms of a carve-out, leaving that to the interested parties.

Professionals in a carve-out Chapter 11 case must at all times closely monitor not only the fees and expenses they are incurring, but the fees and expenses of all of the other professionals in the case who may be included in the carve-out, and, if applicable, any Mandatory Fees. This is the only way the professional will know whether the total fees and expenses being incurred may have exceeded or may soon exceed the carve-out. In that event, the professionals might make a request to the secured creditor to expand the amount of the carve-out. If such a request is not granted, at least the professionals will know that they may be providing services and incurring expenses that may only be paid by a claim for a pro rata share of the carve-out.

Page 10

**BK. 02-22582**

In a case such as the Debtor's Chapter 11 case, where there is not only the Carve-Out but also a Super Priority Claim, no professional, without obtaining an increase in the amount of the Carve-Out or a subordination of the Super Priority Claim, should have an expectation that it will be paid its fees and expenses beyond its ability to participate in the original Carve-Out.

**II. <u>Compensation for the Recovery of Preferences by Damon & Morey</u>**

Notwithstanding the Super Priority Claim and the Interim Allowance Order, now that the U.S. Trustee and Congress have asserted that the Court should revisit the fees and expenses incurred by Damon & Morey in connection with the Preference Recoveries, the Court believes that the reasonable value of all of the Preference Services that Damon & Morey has performed is thirty percent (30%) of the actual Recoveries made.

This is a reasonable contingent fee, given that the comparable contingent fees one would expect to pay for a portfolio like the alleged preferences involved in this case would range from twenty-five percent (25%) to thirty-three and one-third (33 1/3%) of recoveries. In addition to the thirty percent (30%) of Recoveries, Damon & Morey shall be entitled to its actual related expenses in the amount of $11,185.00 ($427.00 in the Interim Application and $10,757.00 in the Second Interim Application), incurred in connection with the Preference Recoveries.

**BK. 02-22582**

Although it is true that Congress holds a Super Priority Claim and that all available assets of the Debtor's estate, with the exception of the administrative expenses of the pending Chapter 7 case, are subject and subordinate to that Claim, all Congress could reasonably have expected to receive on the Preference Recoveries were the net Recoveries. Someone would have to pursue and collect the preferences, and it is unreasonable to expect that the particular preference claims involved would be pursued and collected by a competent professional for less than a contingent fee of between twenty-five percent (25%) and thirty-three and one-third percent (33 1/3%) plus expenses.

For the Court to fail to compensate Damon & Morey in some reasonable manner for the services it provided and expenses it incurred would: (1) unjustly and unnecessarily enrich Congress; (2) not be a proper exercise of this Court's discretion; and (3) not be in furtherance of the equitable principles this Court operates under.

In a January 17, 2006 letter submission by Damon & Morey, it indicated that it has collected $182,584.33 in Preference Recoveries, thirty percent (30%) of which is $54,775.00. This is the amount to be awarded to Damon & Morey for all of its Preference Services. In addition, it is awarded $11,184.00 in related expenses.

**Page 12**

**BK. 02-22582**

To the extent that Damon & Morey has received under the Interim Allowance Order any amounts in excess of its retainer and its pro rata share of the Carve-Out, as determined below in this Decision & Order, those amounts are to be credited against the above amounts awarded to it for its Preference Services and related expenses.

**III. Damon & Morey's Participation in the Carve-Out**

Although it is correct, as asserted by Damon & Morey, that not all of the Other Professionals that Congress has alleged it paid in the total amount of $93,508.00 have had those amounts formally allowed by the Court, as required by the Carve-Out, there has been no waiver by those Other Professionals of their right to request such formal allowances for purposes of this Decision & Order and the determination of the extent to which they and Damon & Morey can participate in the Carve-Out, absent any voluntary payments to those Other Professionals that Congress may elect to make.

For purposes of this Decision & Order and the Court's determination of the amount Damon & Morey can be compensated for from the Carve-Out, the Court will assume that the amount of $93,508.00 alleged to have been paid to the Other Professionals

**BK. 02-22582**

would be the amount that the Court would allow if they were all to make proper applications.[9]

The total amount Damon & Morey is to be paid from the Carve-Out is computed as follows:

| 1. | Fees allowed by Interim Allowance Order | $94,866.00 |
|---|---|---|
| 2. | Fees for Preference Services allowed by Interim Allowance Order to be paid pursuant to subsequent Court orders, but not paid | $23,500.00 |
| 3. | Expenses allowed by Interim Allowance Order | $4,830.00 |
| 4. | Fees requested by Second Interim Application | $121,189.00 |
| 5. | Expenses requested by Second Interim Application | $14,982.00 |
| | | |
| | **Total Fees and Expenses** | **$259,367.00** |

---

[9] Nothing in this Decision & Order is intended to preclude Damon & Morey from forcing the Other Professionals, with the exception of Woods Oviatt, to make such formal applications for allowances. However, that might increase their fees by the amount necessary to make those applications, and the Court would hope that the interested parties could take the Court's formulas for the compensation of Damon & Morey and work out the details of any mathematical or factual errors without the need for further Court involvement. However, the Court is prepared to become involved in any way that it must to see this matter through to conclusion.

**Page 14**

BK. 02-22582

| 1. | Preference Services included in Interim Allowance Order | $25,765.00 |
|---|---|---|
| 2. | Preference Expenses included in Interim Allowance Order | $427.00 |
| 3. | Preference Services in Second Interim Application | $95,186.00 |
| 4. | Preference Expenses in Second Interim Application | $10,757.00 |
| | | |
| | **Preference Fees and Expenses** | **$132,135.00** |

| 1. | Eligible Fees and Expenses for Carve-Out | $92,770.00 |
|---|---|---|
| 2. | Fees and Expenses of Other Professionals | $93,508.00 |
| | | |
| | **Total Professional Fees and Expenses** | **$186,278.00** |

| 1. | Total Fees and Expenses | $259,367.00 |
|---|---|---|
| 2. | Less: Damon & Morey Preference Fees and Expenses for which a separate award has been made | ($132,115.00) |
| | | |
| | **Total Professional Fees and Expenses before application of retainer** | **$127,252.00** |
| | | |
| 3. | Less: Retainer balance applied in payment of Interim Allowance | ($34,462.00) |
| | | |
| | **Net Eligible Fees and Expenses for Payment from Carve-Out** | **$92,770.00** |

**BK. 02-22582**

Percentage participation for Damon & Morey in the Carve-Out:

$$\$92,770.00 \div 186,278.00 = 49.8\%$$

$$49.8\% \times \$50,000 \text{ Carve-Out} = \$24,900.00$$

$24,900.00 is due Damon & Morey from Carve-Out.

**IV. <u>Compensation for the Recovery of Accounts Receivable by Damon & Morey</u>**

Although Damon & Morey alleged that it had a separate agreement with Congress to compensate it for some or all of its Receivables Services and related expenses, and that the agreement is contained in its submissions, the Court was unable to find that agreement. To the extent that Congress did enter into an agreement, separate and apart from the Carve-Out, with Damon & Morey to compensate it for some or all of its Receivables Services and related expenses, those amounts should be paid by Congress to Damon & Morey, and the Court's computation of the amount Damon & Morey is to receive from the Carve-Out must be adjusted accordingly by the parties.

<u>**CONCLUSION**</u>

1. Damon & Morey is awarded total fees and expenses, as attorneys for the Debtor, in addition to the retention of its retainer, of $90,859.00 as follows:

    A. $54,775.00 for fees and $11,184.00 for related expenses for all of its Preference Services; and

**BK. 02-22582**

   B.  $24,900.00 for all other fees and expenses representing its pro rata share of the Carve-Out;

2. The $65,233.00 it received in excess of its retainer in payment of the Interim Allowance is to be credited against the $90,859.00;

3. To the extent necessary to be consistent with the Decision & Order, the Interim Allowance Order is hereby deemed amended;

4. The balance due Damon & Morey of $25,629.00 ($90,859.00 less $65,233.00) shall be paid to it by Congress by the close of business on April 7, 2006, unless this Decision & Order is appealed, in which case the payment shall be subject to any determination made by any final and unappealable orders made in connection with the appeal; and

5. The parties may adjust the awards and payment provided for in this Decision & Order if there was or is any agreement between Congress and Damon & Morey regarding Damon & Morey's Receivables Services and related expenses.

   **IT IS SO ORDERED.**

                                           _____/s/_____
                                           **HON. JOHN C. NINFO, II**
                                           **CHIEF U.S. BANKRUPTCY JUDGE**


**Dated:  March 24, 2006**